# Richmond

## AMERICAN NATIONAL BANK AND TRUST COMPANY, OF DANVILLE V. ROBERT H. HERNDON, JR., ET ALS.

January 18, 1943.

Record No. 2598.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Crews & Clement*, for the appellant.

*Horace G. Bass* and *W. G. Vansant*, for the appellees.

BROWNING, J., delivered the opinion of the court.

We are called upon to construe the will of R. H. Herndon, late of Danville, Virginia, which is as follows, omitting formal parts and signature:

"I, R. H. Herndon, of the city of Danville, Virginia, do make this my last will and testament, revoking all other wills heretofore made by me.

"Item 1:   I desire that all of my just debts be paid.

"Item 2:   I give to my beloved wife, all of my household and kitchen furniture, two automobiles, one of which is now in my garage, and the other, a ford car, now in the possession of F. R. Cox, also seventy-five (75) shares of the common stock of the Riverside & Dan River Cotton

Mills, Incorporated, the above mentioned property to be hers without restriction or limitation of any sort.

"Item 3: I give and devise to my wife, all of my real estate, and improvements thereon, to have and to hold during her natural life, with the power in my said wife, as Executrix of this will, or in her own right, to sell said real estate, or any part thereof, and convey a good title thereto, she to reinvest the money in other real estate, and at the death of my said wife, the property described in this Item of my Will, shall go share and share alike to my children, or their issue, per stirpes and not per capita.

"Item 4: I give to Annie L. Herndon, Two thousand ($2000.00) Dollars, in cash, or common stock of the Riverside & Dan River Cotton Mills, Incorporated.

"Item 5: I give to Emily R. Herndon, Twenty-five hundred ($2500.00) Dollars, to complete her education, or use as she sees fit.

"The amounts given in Items 4 and 5 of my Will, to be in addition to any other amounts which my two children named in said items shall receive in this Will.

"Item 6: The remainder of my property, real, personal, and mixed, not specifically disposed of herein shall be divided equally between, Robert H. Herndon, Jr., William R. Herndon, Clarence Herndon, Halcourt F. Herndon, Annie L. Herndon, and Emily R. Herndon, share and share alike.

"Item 7: I nominate and appoint my wife, Executrix of this will and desire that she may be allowed to qualify without security."

Items 3 and 6 are the subjects of the contention. The testator's son, Halcourt F. Herndon, conveyed his interest in his father's real estate in the city of Danville to secure the payment of an indebtedness of Two Hundred Dollars ($200.00), which remains unpaid. He conveyed the same interest to the appellant, the American National Bank and Trust Company, of Danville, to satisfy his indebtedness of One Thousand Dollars ($1000.00) to it.

In July, 1941, three of the children of R. H. Herndon instituted a chancery suit praying the court to determine the co-owners of the real estate of the testator and decree a partition of it.

The appellant having been made a party defendant filed its answer setting up its claim to the interest of Halcourt F. Herndon, Sr., under the deed referred to.

Halcourt F. Herndon, Sr., died after the death of the testator but before the death of his mother, Emma B. Herndon, who was the life tenant under item 3, leaving a widow and two infant children. The guardian *ad litem* of the infants filed an answer claiming for the infants the interest of their deceased father in the said real estate. Thus the issue was joined and we have the bank contending that under the will its grantor took a vested remainder in the real estate of the testator and thus conveyed to it an indefeasible title, and the widow and children of Halcourt F. Herndon, Sr., asserting that his interest did not vest until the death of the life tenant, when it passed to them, they taking the interest under the will which their father would have taken had he survived the life tenant.

In brief the issue is whether words of survivorship refer to the death of the testator or to that of the life tenant.

This question has been before this court in almost countless cases. While it is rare, if ever, that two wills are precisely alike yet in some of the adjudicated cases we find wills so similar to this one and the applicable rules of construction being the same we may say that our work has been heretofore largely done for us. This is particularly true of the case of *James* v. *Peoples Nat. Bank*, 178 Va. 398, 17 S. E. (2d) 387, in which Mr. Justice Hudgins wrote an exhaustive and convincing opinion, collecting and analyzing many of the cases.

In the case in judgment the learned chancellor, conceding that if item 3 were all of the will the interest in question vested at the death of the testator, but reading item 6 in connection with it he thought that there was an adjectival or qualifying significance which disclosed the intention

of the testator to postpone the vesting of his estate to the death of the life tenant. We do know that the crucial, vital, focal thing is the intention of the testator. When we have that the quest is ended.

The written expression of human language has never reached such a state of precision and exactness as to preclude one of mental capacity and ingenuity from saying that one thing is meant and another of equal versatility saying that something else is intended. Quite frequently confusion ensues from which comes the troublesome element which we call "doubt" and at that juncture the law, ever wholesome and remedial, provides the way out by supplying its rules of construction.

We are not in agreement with the chancellor. In the first place, item 6 is the usual residuary clause of a will which disposes of any property that may remain after satisfying previous bequests and devises. What we sometimes call abundant precaution usually induces it. This particular residuary clause contains the old stock phrase describing property as "real, personal and mixed". We do not think that the phrase has any special meaning, as used, nor do we think that the clause itself has any connection with or throws any light upon the intention of the testator as to item 3.

■ ■ It is conceded that the law of wills in Virginia favors the early vesting of estates and we find very clear and sound reasoning for this in the early case of *Hansford* v. *Elliott*, 9 Leigh (36 Va.) 79, in which it was held that wherever there were surviving words in a will, without manifesting any special intent to the contrary, the safest and soundest construction and that most consonant to the intention of the testator and best supported by the authorities, is to refer them to the death of the testator, and not to give the whole estate to such a legatee as happens to survive the tenant for life, or, if none survives, to declare a total intestacy. And this is the established doctrine of this court, whatever conflict there may be among the English cases, upon which counsel for the appellants, in that case, relied.

In the case of *Gish* v. *Moomaw*, 89 Va. 345, 15 S. E. 868, this was said:

"The question made by counsel and sustained by the court below is as to the time in respect to which the survivorship is to be determined. The court below held that this survivorship relates to the death of the life tenant and in doing so held this language: 'After providing for his wife, the testator desired to provide for his brothers, or, if any of them should fail to survive his wife, for the issue of those who were dead.' It is inconceivable how any such conclusion was arrived at. There certainly is not a word in the will upon which to predicate any such idea.

"But the court below construes the words of survivorship as relating to the time of the expiration of the life estate. This is clearly an erroneous idea, and one entirely unsupported by a single word or phrase in the will. No rule of law is more firmly established by the uniform course of decision in this court than that which, in the absence of clear and unequivocal expressions of a different purpose, refers such words of survivorship to the death of the testator and not to that of the life tenant."

In the case of *McComb* v. *McComb*, 96 Va. 779, 32 S. E. 453, the court said: "The settled rule of interpretation in this state is that all devises and bequests are to be construed as vesting at the testator's death, unless the intention to postpone the vesting is clearly indicated by the will. *Crews' Adm'r* v. *Hatcher*, 91 Va. 378, 21 S. E. 811; *Stanley* v. *Stanley's Adm'r*, 92 Va. 534, 24 S. E. 229; *Cheatham* v. *Gower*, 94 Va. 383, 26 S. E. 853."

In the case of *James* v. *Peoples Nat. Bank, supra*, Mr. Justice Hudgins quotes with approval from the case of *French* v. *Logan's Adm'r*, 108 Va. 67, 69, 60 S. E. 622, in which this court said, the eminent Judge Buchanan writing the opinion, "It is a familiar principle, that the law favors the vesting of estates, and where a bequest or devise is made and the property is not to be enjoyed in possession until some future period or event, it will, where no special intent to the contrary is manifested in the will, be held to be

vested in interest immediately on the death of the testator, rather than contingent upon the state of things which may happen to exist at the period when the legatees or devisees are entitled to the possession of the property given."

We are unable to find anything in the will under construction which clearly indicates the intention of the testator to postpone the vesting of the devises and bequests of his will. In fact, to our minds, there is a total absence of "clear and unequivocal expressions" indicating such purpose.

For the reasons given, the decree of the trial court is reversed and the case is remanded for the entry of a decree carrying into effect the judgment of this court.

*Reversed and remanded.*